**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**DIVISION**

| | | |
|---|---|---|
| **AFTER II MOVIE, LLC, ET AL.,** | § | |
| *Plaintiff* | § | |
| | § | |
| **v.** | § | **No. 1:21-CV-709-RP** |
| | § | |
| **GRANDE COMMUNICATIONS** | § | |
| **NETWORKS, LLC,** | § | |
| *Defendant* | | |

**REPORT AND RECOMMENDATION**
**OF THE UNITED STATES MAGISTRATE JUDGE**

TO:   THE HONORABLE ROBERT PITMAN
      UNITED STATES DISTRICT JUDGE

Before the Court is Defendant Grande Communications Networks, LLC's Motion to Dismiss Plaintiffs' Second Amended Complaint, Dkt. 46, and all related briefing. After reviewing these filings and the relevant case law, the undersigned issues the following report and recommendation.

## I.      BACKGROUND

Plaintiffs After II Movie, LLC, et al., purport to own the copyrights to certain motion pictures, primarily direct-to-video movies such as "Mechanic: Resurrection," "Extremely Wicked, Shockingly Vile and Evil," and "Boyka: Undisputed IV." Dkt. 45, at ¶¶ 9-28, Dkt 45-1. Defendant Grande is an internet service provider headquartered in Texas. Plaintiffs seek to hold Grande secondarily liable for acts allegedly committed by subscribers of Grande's internet service. Specifically, Plaintiffs claim that Grande is secondarily liable for copyright infringement because it did not

terminate the internet access of subscribers that Plaintiffs' agent, Maverickeye UG, accused of sharing copyrighted content over the internet. In addition, Plaintiffs claim that Grande's subscribers violated the Digital Millennium Copyright Act, and seek to hold Grande secondarily liable for these alleged DMCA violations.

Plaintiffs allege they engaged Maverickeye, a third party based in Germany, to monitor BitTorrent activity for infringement of their copyrighted works. Dkt. 45, at ¶ 72. Plaintiffs allege that Maverickeye would then send "Notices of infringements"—emails—to Grande regarding instances of copyright infringement by Grande's subscribers. *Id.*, at ¶ 102. Plaintiffs assert that Grande failed to take action after these notifications and allowed pirating of their copyrighted works via use of BitTorrent. Grande moves to dismiss Plaintiffs' claims of contributory copyright infringement, DMCA claim, and request for injunctive relief asserting Plaintiffs have failed to state a claim upon which relief may be granted.

## II.      LEGAL STANDARD

Pursuant to Rule 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In deciding a 12(b)(6) motion, a "court accepts 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Martin K. Eby Constr. Co. v. Dall. Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)). "To survive a Rule 12(b)(6) motion to dismiss, a complaint 'does not need detailed factual allegations,' but must provide the plaintiff's grounds for entitlement to relief—including factual allegations that when

assumed to be true 'raise a right to relief above the speculative level.'" *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). That is, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).

A claim has facial plausibility "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* A court ruling on a 12(b)(6) motion may rely on the complaint, its proper attachments, "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Dorsey v. Portfolio Equities, Inc.,* 540 F.3d 333, 338 (5th Cir. 2008) (citations and internal quotation marks omitted). A court may also consider documents that a defendant attaches to a motion to dismiss "if they are referred to in the plaintiff's complaint and are central to her claim." *Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004). But because the court reviews only the well-pleaded facts in the complaint, it may not consider new factual allegations made outside the complaint. *Dorsey,* 540 F.3d at 338. "[A] motion to dismiss under 12(b)(6) 'is viewed with disfavor and is rarely granted.'" *Turner v. Pleasant*, 663 F.3d 770, 775 (5th Cir. 2011) (quoting *Harrington v. State Farm Fire & Cas. Co.*, 563 F.3d 141, 147 (5th Cir. 2009)).

## III.   DISCUSSION

### A.   Contributory Copyright Infringement Claim

Grande argues that Defendants cannot state a claim for contributory copyright infringement. "A party is liable for contributory infringement when it, with knowledge of the infringing activity, induces, causes or materially contributes to infringing conduct of another." *Alcatel USA, Inc. v. DGI Techs., Inc.*, 166 F.3d 772, 790 (5th Cir. 1999).

#### 1.   Direct infringement

Grande first argues that Plaintiffs cannot plead a claim for secondary copyright infringement because they have failed to identify instances of actual direct infringement. There cannot be secondary infringement without direct infringement. *Phoenix Entm't Partners LLC v. Boyte*, 247 F. Supp. 3d 791, 799 (S.D. Tex. 2017). Grande asserts that Plaintiffs fail to identify direct infringement because Plaintiffs identify the alleged direct infringers by IP address only, and there are no facts in the pleading supporting that the alleged infringing activity at that address was performed by a Grande subscriber. Grande argues that an IP address merely identifies an internet connection and not a person. Dkt. 46, at 9. Accordingly, Grande asserts Plaintiffs' allegations fail as conclusory. *Fernandez-Montes v. Allied Pilots Ass'n*, 987 F.2d 278, 284 (5th Cir. 1993) (stating "conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss"). Grande asserts that Plaintiffs' pleadings merely support that someone using the IP addresses uploaded or downloaded infringing content.

Grande relies on *Cobbler Nevada v. Gonzalez*, 901 F.3d 1142, 1145 (9th Cir. 2018), in support of its argument. In that case, the plaintiff alleged that someone at an IP address traced to a particular home had made several downloads of a movie, in violation of Cobbler Nevada's copyright. After identifying that Gonzalez, the owner of the home, was the subscriber of the relevant internet account, Cobbler Nevada contacted him and learned that the account belonged to "an adult care home," and the wifi network there "was accessible to both residents and visitors." *Id.* Cobbler Nevada ultimately sued Gonzalez for copyright infringement, alleging that as the subscriber of the internet service, he was liable as a direct infringer, and alternatively, he was liable as a contributory infringer for failing to take steps to stop the infringement once he became aware of it.

The trial court dismissed the contributory infringement claim on a 12(b)(6) motion, and the Ninth Circuit affirmed. The panel rejected the argument that Gonzalez could be contributorily liable for infringement based solely on the allegations that he was the subscriber of the internet service, that he was aware of the infringement, and failed to take action. The court stated, "simply establishing an account does not mean the subscriber is even accessing the internet, and multiple devices can access the internet under the same IP address." *Id.* at 1146-47. Because of the potential that multiple individuals and multiple devices can connect via a single IP address, the court found that "a plaintiff must allege something more to create a reasonable inference that a subscriber is also an infringer." *Id.* at 1145; *see also Cobbler Nevada, LLC v. Gonzales*, No. 3:15-CV-866, 2016 WL 3392368, at *1, *3

5

(D. Or. June 8, 2016) ("While it is possible that the subscriber is also the person who downloaded the movie, it is also possible that a family member, a resident of the household, or an unknown person engaged in the infringing conduct."); *Malibu Media LLC v. Duncan,* No. 4:19-CV-2314, 2020 WL 567105, at *4-6 (S.D. Tex. Feb. 4, 2020) (granting the defendant's motion to dismiss because identifying an allegedly infringing IP address alone is insufficient to state a claim for copyright infringement—even when the registered subscriber associated with the IP address is named as a defendant) (collecting cases); *see also PTG Nevada, LLC v. Chan*, No. 1:16-CV-1621, 2017 WL 168188, at *2 (N.D. Ill. Jan. 17, 2017) ("Due to the risk of 'false positives,' an allegation that an IP address is registered to an individual is not sufficient in and of itself to support a claim that the individual is guilty of infringement."). Grande argues that Plaintiffs have failed to plead the "something more" required to support direct infringement, and therefore have not adequately pleaded a contributory copyright infringement claim.

Plaintiffs respond that the caselaw does not state that for contributory infringement to occur, the direct infringer does not have to be the subscriber. Additionally, Plaintiffs argue that *Cobbler Nevada* does not apply to secondary liability suits against internet service providers like Grande where "enforcement against direct infringers is both impractical and improbable." Dkt. 47, at 6 (citing *MGM Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 929-30 (2005); *Sony Music Entm't v. Cox Commc'ns, Inc.*, 426 F. Supp. 3d 217, 235 (E.D. Va. 2019); *UMG Recordings, Inc. v. Grande Commc'ns Networks, LLC*, 384 F. Supp. 3d 743, 756 (W.D. Tex. 2019)

*UMG Recordings, Inc. v. RCN Telecom Servs., LLC*, No. 19-17272 (MAS) (ZNQ), 2020 WL 5204067, at *10 n.5 (D.N.J. Aug. 31, 2020).

Grande responds Plaintiffs cannot distinguish *Cobbler Nevada*, and that Plaintiffs' pleadings specifically rely on the theory that the direct copyright infringers are Grande subscribers. The relevant pleadings state:

> 151. Defendant is liable as a contributory copyright infringer for the infringing acts of its subscribers. Defendant has actual and constructive knowledge of the infringing activity of its subscribers. Defendant knowingly caused and otherwise materially contributed to these unauthorized distributions and reproductions of Plaintiffs' Works.

Dkt. 45, at 22. And at paragraph 149, Plaintiffs state that, "Despite Defendant's knowledge that its subscribers were using its service to engage in widescale copyright infringements, Defendant has failed to take reasonable steps to minimize the infringing capabilities of its service." *Id.* Grande argues that because Plaintiffs merely plead that "subscribers" have engaged in copyright infringement, this is insufficient to plead a copyright infringement claim, and therefore, a contributory copyright infringement claim. Additionally, Grande argues that the caselaw addressing direct infringement is applicable to claims to contributory infringement, because Plaintiffs must prove both direct infringement and then the elements of secondary liability. Dkt. 48, at 5.

The undersigned finds that the facts in *Cobbler*, *Duncan*, and *PTG Nevada*, are distinguishable from this case. In this case, unlike in those cases, Plaintiffs seek to impose liability against the ISP, via contributory liability, and not an individual subscriber. Plaintiffs sufficiently allege that Grande's subscribers, or those using their accounts, employ Grande's internet service to copy and distribute the Works to

which Plaintiffs hold legitimate copyrights. Dkt. 45, at ¶¶ 39-45, 72-84. The procedural posture in this case is more similar to the cases cited by Plaintiffs, where the courts noted that the reasoning in *Cobbler* was inapplicable in suits brought against ISP defendants. *See Grande*, 384 F. Supp. 3d at 767 n.6 (noting that the defendant's reliance on *Cobbler* was misplaced as *Cobbler* involved an individual internet subscriber who took no affirmative steps to foster infringement whereas the ISP continued to provide internet service to customers despite knowledge of repeated infringement); *RCN*, 2020 WL 5204067, at *10 n.5 (noting that *Cobbler* was inapposite as *Cobbler* involved an individual subscriber as opposed to the actual ISP defendant in this case). Additionally, *Grande* originated in the Austin Division of the Western District of Texas, and as such carries more persuasive weight for the undersigned. *See also Bodyguard Productions, Inc. v. RCN Telecom Services, LLC*, No. 3:21-CV-15310-GCTJB, 2022 WL 6750322, at *6 (D.N.J. Oct. 11, 2022). The undersigned finds that Plaintiffs' claims for contributory infringement should not be dismissed for failing to adequately plead direct infringement.

> 2.   Knowingly induced, caused, or materially contributed to the alleged infringement

"One infringes contributorily by intentionally inducing or encouraging direct infringement." *Grokster,* 545 U.S. at 930. "To establish a claim for contributory copyright infringement, a copyright owner must show that the defendant, with knowledge of the infringing activity, induces, causes or materially contributes to infringing conduct of another." *DynaStudy, Inc. v. Houston Indep. Sch. Dist.*, 325 F. Supp. 3d 767, 775 (S.D. Tex. 2017); *see also Alcatel,* 166 F.3d at 790 (5th Cir. 1999).

Grande asserts that Plaintiffs' Second Amended Complaint fails to allege that Grande knowingly induced, caused, or materially contributed to any alleged act of direct infringement. Dkt. 46, at 12. Grande relies on *Grokster* for the proposition that "mere knowledge of infringing potential or of actual infringing uses would not be enough here to subject a distributor [of an infringing device] to liability," "[n]or would ordinary acts incident to product distribution, such as offering customers technical support or product updates, support liability in themselves." 545 U.S. at 937. "[I]n the absence of other evidence of intent, a court would be unable to find contributory infringement liability merely based on a failure to take affirmative steps to prevent infringement, if the device otherwise was capable of substantial noninfringing uses." *Id.* at 939 n.12.

Grande argues that at best, Plaintiffs' Second Amended Complaint includes only two allegations of Grande's "affirmative steps" that allegedly encouraged or induced infringement: (1) Grande advertised fast internet speeds,[1] Dkt. 45, at ¶¶ 141-144; and (2) Grande failed to terminate the accounts of alleged "repeat infringers" or otherwise prevent them from accessing Grande's network, *id.*, at ¶¶ 36-37, 129-131. Grande maintains that neither of these alleged acts are legally sufficient to plausibly state a claim for contributory copyright infringement.

---

[1] Grande first argues that an ISP advertising its internet speed is precisely the kind of "ordinary act incident to product distribution" that cannot support contributory liability. *Grokster*, 545 U.S. at 937. Plaintiffs do not address this argument and instead rely on Grande's continued provision of internet services to allegedly known infringing subscribers to support its claims of material contribution.

Plaintiffs base their claims on the continued provision of internet service to certain subscribers despite knowledge that the subscribers were using Grande's services to pirate Plaintiffs' Works. Dkt. 47, at 7. Grande argues that failing to terminate a subscriber's internet account is not an "affirmative step" at all. *Grokster*, 545 U.S. at 919. Plaintiffs rely on *Grande*, 384 F. Supp. 3d at 767, which holds that continuing to sell internet services and access to infringing customers qualifies as an affirmative step. The undersigned finds that the caselaw supports that failing to act can constitute an affirmative step sufficient to plead contributory copyright infringement. *Id.*

Additionally, Plaintiffs argue that affirmative steps are not the only way a defendant can contribute to infringing conduct and that a defendant can be contributorily liable if it has knowledge of specific infringing activity and fails to take simple measures to prevent further infringement. *Id.* at 768 (stating "service providers like Grande 'can be held contributorily liable if [they] ha[ve] actual knowledge that specific infringing material is available using its system, and can take simple measures to prevent further damages to copyrighted works, yet continue[] to provide access to infringing works'"); *see also Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1172 (9th Cir. 2007) ("Google could be held contributorily liable if it had knowledge that infringing Perfect 10 images were available using its search engine, could take simple measures to prevent further damage to Perfect 10's copyrighted works, and failed to take such steps."); *A&M Records v. Napster, Inc.*, 239 F.3d 1004, 1021 (9th Cir. 2001) ("if a computer system operator learns of specific infringing

10

material available on his system and fails to purge such material from the system, the operator knows of and contributes to direct infringement").

Plaintiffs plead that Grande had knowledge of the specific infringing activity from the thousands of notices sent to it by Plaintiffs' agents, yet Defendant failed to take simple measures stop it, and continued to provide services to known infringers. Dkt. 45, at ¶¶ 108-14, 116-18. They submit these notices are sufficient to establish the requisite knowledge for contributory infringement. *See BMG Rights Mgmt. (US) LLC v. Cox Commc'ns, Inc. ["Cox II"]*, 199 F. Supp. 3d 958, 979 (E.D. Va. 2016); *RCN*, 2020 WL 5204067 at *10 n.5; *Grande*, 384 F. Supp. 3d at 767.

Grande asserts these notices are insufficient as Plaintiffs have pleaded that Grande only received knowledge of an alleged infringement after it occurred, when Grande received a resulting email "notice" from Maverickeye. Dkt. 45, at ¶¶ 102-08; Grande argues this "general knowledge" is insufficient to base a secondary copyright infringement claim upon. Dkt. 46, at 14 (citing *ALS Scan, Inc. v. Steadfast Networks, LLC*, 819 F. App'x 522, 524 (9th Cir. 2020); *Millennium Funding, Inc. v. 1701 Mgmt. LLC*, No. 1:21-CV-20862, 2021 WL 5882999, at *12 (S.D. Fla. Dec. 13, 2021)).

In *Perfect 10*, the Ninth Circuit held that "a computer system operator can be held contributorily liable if it 'has actual knowledge that specific infringing material is available using its system,' and can 'take simple measures to prevent further damage' to copyrighted works, yet continues to provide access to infringing works." 487 F.3d at 729 (internal citations omitted). In *ALS*, the Ninth Circuit noted the actual number of notices received was "irrelevant" as to actual knowledge in

determining whether a copyright owner of adult films could bring a contributory infringement claim against an entity that leased server space to an alleged direct infringer. The court determined that summary judgment on the issue of contributory infringement was appropriate based on the fact that the operator of the server took measures to prevent damage to copyrighted works, including forwarding the notices which caused the images to be taken down.

*ALS*, unlike this case, was decided on summary judgment, and does not address the pleading standard for a motion to dismiss a contributory infringement claim. Additionally, *ALS* does not actually address what constitutes "actual knowledge of specific infringement" as it was decided on other grounds. Thus, it is not on point. And in this case, Plaintiffs have pleaded that Grande did not forward the notices to its subscribers and failed to terminate the subscribers of the associated accounts. Dkt. 45, at ¶¶138, 117. Additionally, as cited above, other courts have held that notices such as are in issue in this case are sufficient to establish actual knowledge. The undersigned finds Plaintiffs have adequately pleaded that Grande had knowledge of the alleged infringement.

In general, to make a claim for contributory copyright infringement, the plaintiff must allege that the defendant acted with culpable intent. *Grokster*, 545 U.S. at 934-35 (indicating that contributory copyright infringement is based on "fault-based liability derived from the common law" requiring "culpable intent"). Grande also argues that Plaintiffs' allegations regarding Grande's knowledge of infringement

through notices are insufficient to show that Grande acted with "culpable intent." *See, e.g., Millennium Funding,* 2021 WL 5882999, at *12.

In *Millennium*, the court addressed whether a contributory copyright infringement claim should be dismissed for failing to allege culpable intent. Distinguishing *Perfect 10,* where the court found Google had sufficient knowledge of its users' activities, the court found the defendant did not have specific knowledge of infringing activity. The court made this finding despite plaintiffs' sending out notices of the infringing activity, basing its decision on the fact that the defendant provided servers to VPN companies that encrypt their clients' data. The court found this prevented the defendant from knowing of specific infringing activity sufficient to plead culpable intent. Similarly, the court found that because the VPN companies' clients used BitTorrent, defendant did not have specific knowledge of the infringing activity. *Id.*

This case, unlike *Millennium*, involves an ISP who has subscribers, and not a provider of computer servers, who is in turn leasing its servers to VPN companies who then have additional clients whose communications are encrypted. Grande provides unencrypted Internet service to its subscribers, and Plaintiffs have pleaded in its Second Amended Complaint[2] it has the ability to monitor[3] its subscribers' activity in a manner not available to the defendant in *Millennium*. Additionally, the

---

[2] Dkt. 45, at ¶ 125.
[3] Grande asserts that the Court should disregard Plaintiffs' conclusory allegation that Grande can monitor its subscribers' content and control which websites they access. The undersigned finds that Plaintiffs' pleadings are sufficient and that evidentiary deficiencies may be addressed at summary judgment.

holding in *Millennium* has yet to be adopted by any other court. And other courts have found notices to ISPs, such as pleaded in this case, to be sufficient to establish the required knowledge and intent. *RCN*, 2020 WL 5204067, at \*24; *Grande*, 384 F. Supp. 3d at 768 n.7.

Plaintiffs further argue that actual knowledge does not matter as Grande had constructive knowledge of, or was willfully blind to, specific infringing uses of its services. Dkt. 47, at 10. "Contributory infringement requires that the secondary infringer know or have reason to know of direct infringement." *Napster, Inc.*, 239 F.3d at 1020. The knowledge requirement "has been interpreted to include 'both those with actual knowledge and those who have reason to know of direct infringement.'" *Tanksley v. Daniels*, 259 F. Supp. 3d 271, 295 (E.D. Pa. 2017) (quoting *Parker v. Google*, 422 F. Supp. 2d 492, 499 (E.D. Pa. 2006)), *aff'd*, 902 F.3d 165 (3d Cir. 2018)). "In addition, turning a 'blind eye' to infringement is the equivalent of knowledge." *In re Aimster Copyright Litig.*, 334 F.3d 643, 649 (7th Cir. 2003). "A person is 'willfully blind' or engages in 'conscious avoidance' amounting to knowledge where the person was aware of a high probability of the fact in dispute and consciously avoided confirming that fact." *BMG Rights Mgmt. (US) LLC v. Cox Commc'ns, Inc. ["Cox I"]*, 149 F. Supp. 3d 634, 673 (E.D. Va. 2015), *aff'd in part, rev'd in part*, 881 F.3d 293 (4th Cir. 2018) (quoting *Viacom Int'l, Inc. v. YouTube, Inc.*, 676 F.3d 19, 35 (2d Cir. 2012)). "[C]ourts have held that the knowledge element for contributory infringement is met in those cases where a party has been notified of specific infringing uses of its

technology and fails to act to prevent such uses, or willfully blinds itself to such infringing uses." *Cox II*, 199 F. Supp. 3d at 979 (citation omitted).

Plaintiffs have alleged in their pleadings that Grande has received Notices about specific infringing uses of its services, but failed to take measures to prevent such uses, and failed to investigate the piracy. Dkt. 45, at ¶¶ 108-14, 116-18, 137. Based on the law outlined above, Plaintiffs have also adequately pleaded that Grande possessed the requisite knowledge for contributory infringement on this additional basis.

Lastly, with regard to this claim, Grande argues that even if Plaintiffs have adequately alleged that Grande contributed to the alleged infringement, they have not stated a claim because Grande's internet service is capable of "'substantial' or 'commercially significant' noninfringing uses." Dkt. 46, at 15 (citing *Grokster*, 545 U.S. at 942 (Ginsburg, J., concurring)). The undersigned finds this is a misreading of *Grokster,* which holds that one who distributes a device with the object of promoting its use to infringe copyright, as shown by clear expression or other affirmative steps taken to foster infringement, is liable for the resulting acts of infringement by third parties, regardless of whether the service is capable of substantial noninfringing uses. *Id.* at 937. Moreover, this argument has been rejected by courts in the Austin Division. *Grande*, 384 F. Supp. 3d at 767. It has also been rejected by the Fourth Circuit Court of Appeals. *Cox,* 881 F.3d at 306; *see also RCN*, 2020 WL 5204067, at *7-8 (rejecting RCN's argument that material contribution to infringement is precluded by the *Sony* Rule because its internet service has substantial non-

infringing uses). Based on this caselaw, Grande cannot rely on *Grokster* or *Sony* to dismiss Plaintiffs' claim of material contribution to infringing activity.

The undersigned finds that Plaintiffs have alleged sufficient facts to state a plausible claim of contributory copyright infringement against Grande, which is all that is required at the motion to dismiss stage. *See Stross v. Realty Austin, LLC*, 1:20-CV-01071-RP, 2021 WL 2942399, at *4 (W.D. Tex. July 13, 2021), *report and recommendation adopted sub nom. Stross v. Boatwright*, No. 1:20-CV-1071-RP, 2021 WL 8083334 (W.D. Tex. Sept. 19, 2021); *Oppenheimer v. Deiss*, No. 1:19-CV-423-LY, 2019 WL 6525188, at *3 (W.D. Tex. Dec. 3, 2019), *report and recommendation adopted*, 1:19-CV-423LY, 2020 WL 10056214 (W.D. Tex. Jan. 15, 2020) (denying motion to dismiss contributory copyright infringement claim because allegations created reasonable inference that Defendants knew of infringing activity and induced, caused, or materially contributed to direct infringement).

### B.    DMCA Claim

Grande next argues that Plaintiffs' DMCA claim should be dismissed because 17 U.S.C. § 1202 of the DMCA does not provide for secondary liability, and even if it did, Plaintiffs fail to allege facts supporting this theory.

The Digital Millennium Copyright Act prohibits a person from knowingly providing false copyright management information, or intentionally removing or altering copyright management information (CMI) without the copyright owner's permission, with the intent to induce, enable, facilitate, or conceal infringement. 17 U.S.C. § 1202(a)(1), (b)(1). The DMCA defines CMI as any information identifying the

16

work, its author or copyright owner, and the terms and condition of use, or "links to such information," "conveyed in connection with copies ... of [the] work." *Id.* § 1202(c).

### 1.     Whether § 1202 provides for secondary liability

Grande contends that § 1202 does not provide for secondary liability because it is silent on the issue. Dkt. 46, at 16. Grande argues that Plaintiffs' claim fundamentally fails because "[s]tatutory silence on the subject of secondary liability means there is none.*" Boim v. Holy Land Found. For Relief & Dev.*, 549 F.3d 685, 689 (7th Cir. 2008); *see also Cent. Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164, 184 (1994) ("The fact that Congress chose to impose some forms of secondary liability, but not others, indicates a deliberate congressional choice with which the courts should not interfere."); *Abecassis v. Wyatt*, 7 F. Supp. 3d 668, 677 (S.D. Tex. 2014) (dismissing secondary liability claims that were not authorized by the relevant statute). Grande states that it has failed to locate any cases supporting Plaintiffs' theory. And Grande argues that the legislative history of the DMCA makes clear that Congress did not intend to authorize secondary liability. *See, e.g.*, H.R. Rep. No. 105-551(I), at 22 (1998) ("Section 1202 imposes liability for specified acts. It does not address the question of liability for persons who manufacture devices or provide services.").

Plaintiffs cite various cases supporting that this theory has been a basis for a finding of liability in other courts. Dkt. 47, at 13. In *Gordon v. Nextel Commc'ns & Mullen Adver., Inc.*, the Sixth Circuit found that the vicarious-liability principles applicable in the direct copyright infringement context equally apply to alleged

violations of § 1202. 345 F.3d 922, 925-26 (6th Cir. 2003) (concluding that it would be "inappropriate to permit summary judgment ... based on the defendants' lack of actual knowledge of the removal of the copyright management information when they may be vicariously liable for its removal"). Other courts have followed *Gordon* in finding the same. *See, e.g., Atlanta Photography, LLC v. Ian Marshall Realty, Inc.*, No. 1:13-CV-2330-AT, 2014 WL 11955391, at *4 (N.D. Ga. Mar. 7, 2014); *Rosenthal v. MPC Computers, LLC*, 493 F. Supp. 2d 182, 190 (D. Mass. 2007); *Stockart.com, LLC v. Engle*, No. 10-CV-00588-MSK-MEH, 2011 WL 10894610, at *9 (D. Colo. Feb. 18, 2011). Based on the existence of this caselaw, the undersigned declines to hold, at the pleading stage, that principles of vicarious liability are inapplicable to claims arising under § 1202. Therefore, dismissal is inappropriate at this juncture. *See Millennium Funding, Inc. v. Private Internet Access, Inc.*, No. 21-CV-01261-NYW-SKC, 2022 WL 7560395, at *17 (D. Colo. Oct. 13, 2022 ) (declining to rule on whether vicarious liability is available in the context of § 1202 at the dismissal stage, and assuming without deciding, that Plaintiffs can bring vicarious liability claims under § 1202); *Bodyguard,* 2022 WL 6750322, at *12 (stating "the Court agrees that secondary liability may be found under the DMCA.").

> 2.    Whether Plaintiffs have stated a claim for secondary liability pursuant to the DMCA

Grande next argues that Plaintiffs cannot state a claim for secondary infringement pursuant to the DMCA, because they have not pleaded the requisite elements.

Grande argues that Plaintiffs allege no facts showing that Grande: (1) knew any subscriber had violated § 1202; (2) took any steps to encourage or promote the violation of § 1202; (3) could supervise or control its subscribers' compliance with § 1202; or (4) directly profited from its subscribers violating § 1202. Dkt. 45, at ¶¶ 178-83. Plaintiffs respond that they adequately pleaded knowledge of these violations based upon: (1) the notices that Plaintiffs' agent sent that included the specific file name with modified Copyright Management Information; and (2) the letter from Plaintiffs' counsel that explicitly stated that the Copyright Management Information had been modified or altered. *Id.*, at ¶ 119. And Plaintiffs allege that despite this knowledge, "Defendant continued to provide service to the subscribers" and failed to "terminate or take any meaningful action against its subscribers." Dkt. 45, at ¶¶ 120, 121.

The law on this issue is thin. One district court has found allegations of vicarious liability under § 1202(b) sufficient where the allegations set forth: (1) an underlying DMCA violation; (2) the defendant's right and ability to supervise the infringing conduct; and (3) the defendant's financial interest in the infringement. *See Millennium Funding, Inc. v. Doe*, No. 1:21-CV-282-RDA-TCB, 2021 WL 5217018, at *8 (E.D. Va. Oct. 15, 2021), *report and recommendation adopted in pertinent part sub nom. Millennium Funding, Inc. v. Wicked Tech. Ltd.*, 2022 WL 1156579 (E.D. Va. Jan. 20, 2022). Moreover, the applicable law in this area not only sparse but unsettled. *See Polar Bear Prods., Inc. v. Timex Corp.*, 384 F.3d 700, 719 (9th Cir. 2004) (noting that courts have acknowledged that a violation of § 1202 is "an altogether different

violation" than copyright infringement.). The undersigned finds that in light of the dearth of cases and unsettled nature of the law in this area, dismissal of Plaintiffs' § 1202 claim on this basis would be improper at this stage in the proceedings.

Next Grande argues that Plaintiffs have failed to plausibly allege the existence of any relevant CMI. Grande argues that Plaintiffs' Count III is based on the alleged falsification or alteration of information in the file names of digital movie files. *See* Dkt. 45, at ¶¶ 85-91. And Grande argues that Plaintiffs have failed to plead that the CMI in this case is information that is "conveyed in connection with" legitimate copies of the copyrighted work, 17 U.S.C. § 1202(c), because they do not allege that the digital movie files in question were originally legitimate copies with CMI provided by Plaintiffs. Plaintiffs respond that they explicitly allege that "A legitimate file copy of each of the Works includes copyright management information … indicating the title." Dkt. 45, at ¶ 85. And Plaintiffs allege that a file title of a legitimate digital copy of the work is CMI as defined in 17 U.S.C. § 1202(c). *See Energy Intelligence Grp., Inc. v. Kayne Anderson Capital Advisors, L.P.*, 948 F.3d 261, 267 (5th Cir. 2020) (holding that filenames constitute CMI). The undersigned finds Plaintiffs have sufficiently pleaded that the CMI in issue was attached to legitimate copies of the Works.

Grande's third argument is that Plaintiffs fail to allege that any CMI was falsified, removed, or altered, because their claims are that Grande subscribers violated the DMCA by distributing movie files with "added wording" such as the initials RARBG or YTS. *See* Dkt. 45, at ¶¶ 86-90. Grande argues that conduct does

not violate § 1202 because such information is neither false CMI (per § 1202(a)) nor does it constitute an alteration or removal of CMI (per § 1202(b)). Plaintiffs respond that they pleaded that users added the names of torrent sites, such as YTS and RARBG, to the file title of legitimate copies of Plaintiffs' Works. Dkt. 45, at ¶¶ 88-90. And Plaintiffs argue that adding wording or information to a file name is an alteration of the file name. *Hunter Killer Productions, Inc., et al. v. Sabrina Boylan*, No. 3:20-CV-00306-FM, Dkt. 20, at 15 (W.D. Tex. July 28, 2021).

Other courts have concluded that allegations that end users knowingly distributed a plaintiff's copyrighted works with altered CMI was sufficient to allege alteration of the CMI sufficient to make out a claim under the statue. *See Millennium Funding,* 2022 WL 7560395, at *19; *Millennium Funding*, 2021 WL 5217018, at *4, *7 (in default-judgment context, concluding that allegations that "YTS" was added to the file names of protected works were sufficient to allege altered CMI). Accordingly, the undersigned finds that Plaintiffs' claims should not be dismissed on this basis.

Grande lastly argues that Plaintiffs fail to allege the double scienter required by section 1202(a) and (b). Grande relies on *Pierce v. Lifezette, Inc.*, in support. No. 20-CV-0693-ABJ, 2021 WL 2557241, at *5 (D.D.C. June 2, 2021). In *Pierce*, the district court held that §§ 1202(a) and (b) contain what is referred to as a "double scienter" requirement. *See* 2021 WL 2557241, at *5. The court stated that under § 1202(a), "a plaintiff must plausibly allege 'that defendant knowingly provided false copyright information and that the defendant did so with the intent to induce, enable, facilitate, or conceal an infringement.'" *Id.* And, with regard to § 1202(b), the court

held that a plaintiff must plausibly allege that the removal of CMI was intentional. *Id*. Thus Grande argues, it is insufficient for Plaintiffs to vaguely allege that unspecified Grande subscribers generally intended to induce or facilitate infringement. *See* Dkt. 45, at ¶¶ 97-99.

The Second Amended Complaint includes detailed factual allegations asserting that the direct infringers had knowledge that the website or BitTorrent Client from which they obtained their torrent files and file copies was distributing illegal copies of the Work with altered CMI. *Id.*, at ¶¶ 61-62, 85-101. And Plaintiffs allege that Grande's subscribers knew that the entity added to the file name, such as YTS or RARBG, was not the author or a licensed distributor of Plaintiffs' Works. *Id*. The undersigned finds that these allegations adequately plead the knowledge requirements of direct infringement under the DMCA by Defendants' subscribers, sufficient for the Court to addresses secondary liability under the DMCA.

### C.   Claim for Injunctive Relief

Grande moves to dismiss Plaintiffs' Count II, asserting a claim for injunctive relief under 17 U.S.C. § 502 and the DMCA, 17 U.S.C. § 512(j), arguing that a request for injunctive relief is not considered an independent cause of action, but a remedy. Dkt. 46, at 20 (citing *Karl v. Jenkins*, No. 6:16-cv-1342, 2017 WL 3446542, at *1 (E.D. Tex. July 24, 2017), *report and recommendation adopted*, No. 6:16-cv-1342, 2017 WL 3437898 (E.D. Tex. Aug. 9, 2017)).

Plaintiffs respond that they "are not requesting an injunction under the equitable powers of this Court." Dkt. 47, at 18. Instead, Plaintiffs argue that they are

instead seeking an injunction pursuant to 17 U.S.C. § 512(j), which provides that "[t]he following rules shall apply in the case of any application for an injunction under section 502 against a service provider that is not subject to monetary remedies under this section[.]" *Id.* (citing Dkt. 45, at ¶¶ 157-58). "Thus, if Defendant were able to establish that it was entitled to a safe harbor and was therefore 'not subject to monetary remedies,' the Court can still grant an application for the (1)(A) and (B) injunctions of 17 U.S.C. § 512(j)." Dkt. 47, at 18. Further, Plaintiffs assert that the Copyright Act "explicitly provide[s] the Court with authority to grant an order 'restraining the service provider from providing access to a subscriber ... who is engaging in infringing activity ... by terminating the accounts of the subscriber' and 'restraining the service provider from providing access, by taking reasonable steps ... to block access, to a specific, identified, online location outside the United States.'" *Id.*, at 18 (citing 17 U.S.C. §§ 512(j)(1)(A)(ii) & (B)(ii)). Thus, Plaintiffs argue, the injunction they are seeking, "ordering Defendants to terminate the account[s] of subscribers for which they receive three or more notices and block access to the notorious foreign piracy websites their subscribers use," is expressly authorized by statute.

The undersigned agrees that Plaintiffs' Count II should be dismissed as Plaintiffs' application for an injunction is a request for a remedy and is not a separate cause of action. The statutory provision Plaintiffs rely upon, 17 U.S.C. § 512(j), specifically states that the "following rules shall apply in the case of any application for an injunction under section 502 against a service provider that is not subject to

monetary remedies under this section[.]" Section 502 is titled, "Remedies for infringement: Injunctions." *Id.* Based on the plain language of the statute, an injunction is a possible remedy for infringement and does not constitute a separate cause of action. Additionally, Plaintiffs have requested injunctive relief in their Prayer, and will not be prejudiced by dismissal of Count II.

## IV. RECOMMENDATION

In accordance with the foregoing discussion, the undersigned **RECOMMENDS** that the District Court **DENY** Defendant Grande Communications Networks, LLC's Motion to Dismiss Plaintiffs' Second Amended Complaint, Dkt. 46, as to Counts I and III, and **GRANT** the Motion as to Count II and **DISMISS** that count **WITH PREJUDICE**.

## V. WARNINGS

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The district court need not consider frivolous, conclusive, or general objections. *See Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987). A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen days after the party is served with a copy of the Report shall bar that party from *de novo* review by the district court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the district

court. *See* 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn*, 474 U.S. 140, 150-53 (1985);

*Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

SIGNED January 31, 2023.

DUSTIN M. HOWELL
UNITED STATES MAGISTRATE JUDGE