**Exhibit "7"**

CULPEPPER IP, LLLC
Kerry S. Culpepper, HI Bar No. 9837
75-170 Hualalai Road, Suite B204
Kailua-Kona, Hawai'i 96740
Telephone:     (808) 464-4047
Facsimile:     (202) 204-5181
E-Mail:        kculpepper@culpepperip.com
Attorney for Plaintiffs

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| AFTER II MOVIE, LLC; et al., § § Plaintiffs, § § vs. § § GRANDE COMMUNICATIONS § NETWORKS, LLC § § Defendant. § § | **Case No.:** 1:21-cv-709-RP (Copyright) |

**PLAINTIFFS' NOTICE OF DEPOSITION OF GRANDE COMMUNICATIONS NETWORKS, LLC UNDER RULE 30(B)(6) TOPICS 1-30**

Please take notice that, pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure, counsel for AFTER II MOVIE, LLC, BODYGUARD PRODUCTIONS, INC., HITMAN 2 PRODUCTIONS, INC., LHF PRODUCTIONS, INC., MILLENNIUM FUNDING, INC., MILLENNIUM IP, INC., MON, LLC, NIKOLA PRODUCTIONS, INC., OUTPOST PRODUCTIONS, INC., RAMBO V PRODUCTIONS, INC., VENICE PI, LLC, VOLTAGE HOLDINGS, LLC, WONDER ONE, LLC, DALLAS BUYERS CLUB, LLC; HANNIBAL MEDIA, INC.; BADHOUSE STUDIOS, LLC; THE GUARD PRODUCTIONS, LTD; JOLT PRODUCTIONS, INC.; TIL PRODUCTIONS, INC.; and SCREEN MEDIA VENTURES, LLC ("Plaintiffs") will take the deposition of the designated representative(s) of Defendant Grande Communications Networks, LLC ("Grande") on the topics listed below. Grande must designate

1

persons with sufficient knowledge to testify on all information known or reasonably available to Grande on these topics. The deposition will occur on a date or dates and at a location to be agreed upon by Plaintiffs and Grande, but not later than December 10, 2022. The deposition will be taken before a court reporter, under oath, and will be recorded by stenograph, videotape, and audiotape.

## DEFINITIONS

1. "Grande" or "Defendant" mean Defendant Grande Communications Networks, LLC and/or any persons or entities acting on its behalf or in concert with it, its employees, consultants, agents, officers, representatives, attorneys, or other persons authorized to act for Grande Communications Networks, LLC.

2. "Subscriber" or "customer" means one or more individual(s) or entities Defendant assigned an IP address for Internet service, including the individual(s) or entities responsible for paying for the Internet service.

3. "Communication" means a document that has been delivered by, sent by, addressed to, copied to, or transmitted by one person or entity to another person or entity. A correspondence may be in written form, electronic form, or in email form. A correspondence sent by email incudes all attachments. It includes memoranda distributed to anyone in an office, including but not limited to intra-office memoranda and inter-office memoranda.

4. "Churn Rate" means the annual percentage rate at which customers stop subscribing to Grande's internet services.

5. "Marginal cost" means the cost to Grande of providing internet services to one additional customer.

6. "Internet Protocol ("IP") Address" means a unique string of numbers and or letters that

identifies a specific interface on a network and is assigned to a subscriber by an Internet Service Provider ("ISP").

7. "And" and "or" and "and/or" shall be construed conjunctively or disjunctively as necessary to bring within the scope of the request all responsive documents.

8. "Any" shall include "all" and "all" shall include "any".

9. As used herein, the term "document" or "documents" shall mean and include the following:

    a. "Documents" and "electronically stored information" as these terms are used in FRCP Rule 34. Such material includes "writings, drawings, graphs, charts, photographs, sound recordings, images, and other data or data compilations—stored in any medium from which information can be obtained either directly or, if necessary, after translation by the responding party into a reasonably usable form;"

    b. Correspondence;

    c. Tangible things containing information;

    d. Notes, memoranda, and journals;

    e. Drawings, blueprints, and plans;

    f. Electronic/digital/computer files and records;

    g. Contracts and agreements;

    h. Legal instruments or official documents;

    i. Financial statements, worksheets, reports, projections, schedules, ledgers, books, records, and journals;

    j. Vouchers, expense accounts, receipts, invoices, bills, orders, billings, cost breakdowns, and checks;

20-023M

    k.   Investigation or incident reports;

    l.   Files, and records;

    m.  Proposals, feasibility studies, engineering studies, renderings, plans, drawings;

    n.   Reports;

    o.   Testifying expert reports, opinions and back up documents; and

    p.   Drafts or draft copies of any of the above.

11.    Documents include email and attachments. You may produce email and attachments in printed form, but you should preserve the electronically stored file, and produce said files if requested. When producing electronically stored information, please produce the files on a DVD or other storage device and identify the software required to open the files.

12.    Documents include electronically stored information, such as, for example, spreadsheets stored as Excel or QuickBooks files on a computer. You may produce such documents in printed form, but you should preserve the electronically stored file, and produce said files if requested.

13.    The instant discovery request does not include documents protected by the attorney-client privilege.

14.    If you object to responding to any discovery request, in whole or in part, state your objection and the factual or legal reasons supporting it. If you object on grounds of privilege, please state the nature of the matter to allow assessment of the sufficiency of the privilege. For each discovery request or part thereof to which you object on the ground of burdensomeness, please indicate the custodian and location of each file or document requested, and the time estimated to obtain the information.

15.    Undefined terms have their plain and ordinary meaning in the context of the relevant

request.

**TOPICS**

1. Each of Grande's policies regarding copyright infringement at its customer accounts, from 2010 to the present.

2. Grande's actual practices regarding copyright infringement at its customer accounts, from 2010 to the present, including but not limited to how Grande processed notices alleging copyright infringement at its user accounts; how Grande logged or tracked the total number of notices alleging copyright infringement at its user accounts; whether Grande maintained a record of all notices alleging copyright infringement at a user account, or erased or restarted the count of such notices after a certain time period; Grande's criteria for taking any action as to notices alleging copyright infringement at a user account, such as forwarding the notices to user accounts, communicating with users, suspending user accounts, or terminating user accounts.

3. The total number of notices alleging copyright infringement at a Grande customer account, for each year, from 2010 to the present.

4. The total number of customer accounts that Grande suspended or terminated related to copyright infringement at such accounts, for each year, from 2010 to the present.

5. All efforts and actions that Grande took to prevent copyright infringement at customer accounts.

6. The total number of customer accounts for which Grande received two or more notices alleging copyright infringement at those accounts, from 2010 to the present.

7. Grande's internal communications, deliberations, analyses, and considerations regarding copyright infringement at its customer accounts.

8. Grande's internal communications, deliberations, analyses, and considerations regarding

Grande's liability for copyright infringements at its customer accounts, including but not limited Grande's efforts to prevent such infringements, the DMCA safe harbor, and repeat copyright infringements at customer accounts.

9. Grande's reports on copyright infringements at customer accounts, including but not limited to any documents titled "Excessive Violations Report."

10. Grande's internal communications, deliberations, analyses, and considerations regarding torrenting, including but not limited to torrent sites, torrent clients such as BitTorrent, and torrent files.

11. Grande's ability to monitor, suspend, or terminate customers' internet services.

12. The fees that Grande charges for its internet services, including the different tiers of services for each fee, and the time periods for which each fee was charged for those services.

13. The Churn Rate for Grande's internet subscribers, per year.

14. The customer lifetime value of a Grande customer, including but not limited to the average revenue that Grande generates from a customer during the customer's entire relationship with Grande, per year.

15. Grande's costs and expenses in providing internet services to customers, including the marginal cost of providing internet services to each additional customer, per year.

16. Grande's decision in 2010 on how it would enforce its policy on repeat copyright infringements at user accounts, including any decision that Grande would not enforce the policy or that Grande would not take any efforts or action to further copyright infringement, or that Grande would not terminate user accounts related to copyright infringement at that account.

17. The total number of user accounts that Grande terminated between October 2010 and May 2017 related to copyright infringement.

18. The total number of notices alleging copyright infringement that Grande received between October 2010 and May 2017.

19. A statement by any Grande employee or representative regarding Grande's policy or practices on copyright infringement at user accounts "regardless of the source of any notice," "regardless of the content of any notice," and "regardless of the volume of notices… for a given customer."

20. Each inquiry or investigation of any kind by Grande regarding the truth or accuracy of notices alleging copyright infringement at Grande user accounts.

21. Any Grande communication, deliberations, analyses, and considerations regarding how the suspension or termination of user accounts related to copyright infringement, or any other actions or efforts Grande may take to prevent copyright infringement, may deter potential customers from subscribing to or purchasing Grande's services.

22. Any Grande communication, deliberations, analyses, and considerations regarding how suspension or termination of user accounts related to copyright infringement, or any other actions or efforts Grande may take to prevent copyright infringement, may lead to the loss of current Grande customers.

23. Any Grande communication, deliberations, analyses, and considerations how Grande's policy or practices on copyright infringement at user accounts may relate to Grande's ability to attract potential customers or retain current customers.

24. Grande's ability to remotely reset or otherwise monitor any equipment that it provides to customers, including but not limited to routers and cable boxes.

25. Grande's management structure, including but not limited to any of Grande's controlling entities, the nature of Grande's relationship with RCN, and the nature of Grande's relationship

20-023M

with Astound or Astound Broadband.

26.     Grande's negotiations or agreements with any film studio or distributor that allows Grande's customers to watch films on-demand, including information about the profits that Grande receives from any such agreement or Grande's profits from customer's purchases to watch films on-demand.

27.     Grande's policies and practices regarding subpoenas for customer identities in response to requests from law enforcement alleging criminal conduct or copyright infringement at customer accounts, including but not limited to Grande's policy or practice of suspending services to or terminating such customer accounts.

28.     Grande's policies and practices on notifying a customer about a subpoena for the customer's identification related to a copyright infringement action, including but not limited to Grande's policies and practices of sending such notifications by electronic email, certified mail, or first class mail.

29.     Grande's policies and practices  on suspending service to or terminating customer accounts for nonpayment, including but not limited to how soon after nonpayment Grande suspends service to or terminates a customer account.

30.     For each IP address for which Grande received a notice alleging infringement of the copyright(s) of any Plaintiff at that IP address, the total revenues that Grande received related to each customer that Grande assigned the IP address.

DATED: Kailua-Kona, Hawaii, Nov. 11, 2022.

/s/ Kerry S. Culpepper
Kerry S. Culpepper
CULPEPPER IP, LLLC
75-170 Hualalai Road, Suite B204
Kailua-Kona, Hawaii 96740
Telephone: (808) 464-4047
Facsimile: (202) 204-5181
E-Mail: kculpepper@culpepperip.com
Attorney for Plaintiffs

Joanne Bui CA State Bar No. 340378 (*pro hac vice*)
Gregory Dovel CA State Bar No. 135387
DOVEL & LUNER, LLP
201 Santa Monica Blvd., Suite 600
Santa Monica, CA 90401
Telephone: 310-656-7066
Facsimile: 310-657-7069
Email: greg@dovel.com
Email: joey@dovel.com

Attorneys for Plaintiffs MILLENNIUM FUNDING, INC., MILLENNIUM IP, INC., MILLENNIUM MEDIA, INC., BODYGUARD PRODUCTIONS, INC., HITMAN 2 PRODUCTIONS, INC., NIKOLA PRODUCTIONS, INC., OUTPOST PRODUCTIONS, INC., AND RAMBO V PRODUCTIONS, INC.

**CERTIFICATE OF SERVICE**

I hereby certify that on Nov. 11, 2022, I caused a copy of the foregoing to be served upon the following via email.

Zachary C. Howenstine ZHowenstine@atllp.com

Richard L. Brophy RBrophy@atllp.com

Angela B. Kennedy akennedy@atllp.com

Hannah Hope HHope@Atllp.com

Jacqueline Altman jaltman@namanhowell.com

Kyle G. Gottuso KGottuso@atllp.com


By: /s/ Kerry S. Culpepper