IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| AFTER II MOVIE, LLC, ET AL.,<br><br>  Plaintiffs,<br><br>v.<br><br>GRANDE COMMUNICATIONS NETWORKS, LLC,<br><br>  Defendant. | No. 1:21-cv-00709-RP |

**DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION TO STRIKE DEFENDANT'S FIRST AND FIFTH AFFIRMATIVE DEFENSES**

The Court should deny Plaintiffs' second motion to strike Defendant's first affirmative defense (failure to state a claim) and fifth affirmative defense (Digital Millennium Copyright Act ("DMCA") safe harbor defense).[1] The Court has already rejected Plaintiffs' argument that these defenses are futile, in the face of the same arguments Plaintiffs raise again here. *See* May 30, 2023 Order (ECF No. 107). Plaintiffs' motion is a waste of the Court's and the parties' time.

**I.  THE COURT HAS ALREADY REJECTED PLAINTIFFS' ARGUMENTS**

Plaintiffs' Motion asserts that the Court's Order granting Defendant's Motion for Leave did not "decide whether [Defendant's first and fifth] affirmative defenses are insufficient as a matter of law."[2] ECF No. 112 ("Mot. to Strike") at 4. This is incorrect. When the Court granted

---

[1] There may be confusion about what defenses are at issue. It appears there are typos in Plaintiffs' motion where Plaintiffs mistakenly refer to Defendant's DMCA safe harbor defense, under 17 U.S.C. § 512, as Defendant's second affirmative defense (ECF No. 112, at 4) and as Defendant's seventh affirmative defense (ECF No. 112, at 6). The DMCA safe harbor is now Defendant's fifth affirmative defense, as correctly identified in the title of Plaintiffs' motion to strike. *See* ECF No. 112, at 6.

[2] As noted above, Defendant's first and fifth affirmative defenses are at issue; Plaintiffs' references to Defendant's second and seventh affirmative defenses (Mot. to Strike, at 4, 6) appear to be typos.

1

Defendant leave to amend, the Court expressly found that such amendment would not be futile. ECF No. 107, at 2.

When a motion to strike is premised on the "insufficiency" of a defense, a movant must demonstrate that the defense is insufficient as a matter of law. *Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1057 (5th Cir. 1982). "A motion to strike should be denied if there is any disputed question of fact." *Joe Hand Promotions, Inc. v. HRA Zone, L.L.C.*, No. 12-ca-359, 2013 WL 5707810, at *2 (W.D. Tex. Oct. 18, 2013). "District courts are instructed to sparingly use [the Rule 12(f)] procedural device." *Trans Tool, LLC v. Faulkner*, 5:19-cv-01304, 2020 WL 4559820, at *2 (W.D. Tex. June 23, 2020).

## II. PLAINTIFFS OFFER NO BASIS FOR STRIKING DEFENDANT'S FIFTH AFFIRMATIVE DEFENSE (DMCA SAFE HARBOR UNDER 17 U.S.C. § 512(a))

Again, the parties have already briefed Plaintiffs' challenge to the legal sufficiency of Defendant's DMCA safe harbor defense, and the Court rejected Plaintiffs' arguments. *See* ECF No, 107. Plaintiffs offer the same arguments in their second motion to strike, supported by most of the same case law. Nevertheless, in the event the Court wishes to entertain the same arguments again, Defendant explains below why Plaintiffs' arguments should be rejected.

### A. It Is Undisputed that Defendant Is Entitled to Assert a DMCA Safe Harbor Defense in Response to Plaintiffs' Count I

The parties agree that the section 512(a) safe harbor, if applicable, bars Plaintiffs' claims for monetary damages for copyright infringement (Count I). *See, e.g.*, Mot. to Strike, ¶ 18 ("[E]ven if Defendant establishes that it is eligible for one of the safe harbors . . . , Defendant can still be liable for the injunctive relief set forth in §512(j) . . . ."). Plaintiffs do not contend that Defendant's allegations regarding the safe harbor are insufficient to put Plaintiffs on notice of the defense. *See, generally, id.* That should end the inquiry—because Defendant has a viable safe harbor defense, the Court should deny Plaintiffs' request that the defense be stricken. *See United States v. Renda*,

2

709 F.3d 472, 479 (5th Cir. 2013) ("Striking an affirmative defense is warranted if it cannot, as a matter of law, succeed under any circumstances."); *see also Kaiser Aluminum*, 677 F.2d at 1057–58 (motions to strike defenses "are generally disfavored").

For purposes of Plaintiffs' Motion to Strike, it is immaterial whether Plaintiffs could, in theory, attempt to seek injunctive relief even if the DMCA safe harbor applies.  *See Renda*, 709 F.3d at 479.  When Defendant moves for summary judgment under the DMCA safe harbor, Plaintiffs may attempt to come forward with evidence sufficient to support a claim for injunctive relief, to show that Defendant's motion would not fully dispose of Count I.  But there is no such evidence before the Court now, and no reason for the Court to consider the issue at the pleading stage.

In sum, Defendant's fifth affirmative defense invokes the DMCA safe harbor, and it is undisputed that Defendant is entitled to assert this defense in response to Count I.  The Court should therefore deny Plaintiffs' Motion to Strike.

> **B.     There Is No Need for the Court to Decide the Effect of Defendant's Safe Harbor Defense**

When and if the Court finds that Defendant has proved its DMCA safe harbor defense, the Court can decide whether that defense also bars (in whole or in part) Plaintiffs' Count III for violations of the DMCA.  The section 512(a) DMCA safe harbor will be at issue in this case no matter what, because the parties agree that it may bar Plaintiffs' recovery of damages for copyright infringement under Count I.  *See supra*.  Plaintiffs' requested relief therefore would not simplify discovery in any way—the parties will still have to litigate the issue of whether Defendant implemented a "policy" for terminating repeat copyright infringers that satisfies section 512(i)(1)(A).  *See, e.g.*, *Deaf Interpreter Servs., Inc. v. Webbco Enters., L.L.C.*, No. 5:13-cv-00867, 2014 WL 12489609, at *3 (W.D. Tex. June 30, 2014) (motions to strike affirmative defenses are

disfavored because "[c]ourts typically prefer to leave potential questions of law or fact to determinations on the merits once the record is developed, unless the party moving to strike shows prejudice").

The Court has recognized that the authority for Plaintiffs to even bring Count III—for secondary violations of the DMCA's prohibitions on altering so-called "copyright management information"—is "thin." R&R at 19 (ECF No. 74). The same is true of the authority supporting Plaintiffs' Motion to Strike. Plaintiffs do not cite a ***single case*** holding that the DMCA safe harbors are inapplicable to claims for secondary violations of the DMCA. *See* Mot. to Strike, ¶¶ 19–22. The cases cited by Plaintiffs (ECF No. 112, ¶ 20) are inapposite because they do not address the DMCA safe harbor in any way. *See Recif Res.*, *LLC v. Juniper Capital Advisor, L.P.*, No. H-19-2953, 2020 WL 5739138 (S.D. Tex. Sept. 24, 2020); *Microsoft Corp. v. Silver Star Micro, Inc.*, No. 1:06-cv-1350 2008 WL 11506 (N.D. Ga. Jan. 9, 2008); *Diamondback Indus. v. Repeat Precision,* No. 4:18-cv-902, 2019 WL 5842756 (N.D. Tex. Nov. 7, 2019).

If anything, Plaintiffs' position highlights the tenuous nature of their Count III. It would be absurd if, as Plaintiffs suggest, an internet service provider could implement a DMCA safe harbor policy and therefore be shielded from liability for copyright infringement damages, *yet still be secondarily liable for damages under section 1202 of the DMCA for the very same underlying conduct*. Congress never contemplated secondary liability under sections 1201 or 1202 of the DMCA, which is why Congress did not consider it necessary to expressly tie the section 512 safe harbors to those provisions. *See* Def.'s Mot. to Dismiss at 14-15 (ECF No. 46) (discussing the absence of authority for secondary liability in the statute and the legislative history).

In any event, on the facts of this case, the DMCA safe harbor should bar Plaintiffs' claims for damages under section 1202 of the DMCA. Plaintiffs rely on the same allegations to support

4

secondary liability under the DMCA that they rely on to support secondary liability for copyright infringement.  *See, e.g.*, 2nd Am. Compl. ¶¶ 182 (allegations mirroring the elements of contributory copyright infringement), 183 (allegations mirroring the elements of vicarious copyright infringement) (ECF No. 45).  In other words, Plaintiffs effectively allege that Defendant violated the DMCA by committing secondary copyright infringement.  *See id.*  Thus, the section 512(a) safe harbor should apply to Plaintiffs' DMCA claims.  *See* § 512(a) (when the safe harbor applies, "[a] service provider shall not be liable for monetary relief . . . for infringement of copyright . . . .").

Furthermore, it is premature to decide this issue at the pleading stage, as the Court recognized in granting Defendant leave to amend its answer.  May 30, 2023 Order at 2 (ECF No. 107).  On Defendant's motion to dismiss, the Court declined to decide what specific standards apply to Plaintiffs' allegations of secondary liability under the DMCA, noting that "the applicable law in this area is not only sparse but unsettled."  R&R at 19 (ECF No. 74).  Because the absence of clear authority counseled against dismissing Plaintiffs' Count III, it should also counsel against striking Defendant's safe harbor defense as to Count III.  Again, the Court can take up these issues, if necessary, when the merits of Defendant's safe harbor defense are squarely before the Court (*e.g.*, on summary judgment).  *See Deaf Interpreter Services*, 2014 WL 12489609, at *3; *see also, e.g.*, *Alfaro-Huitron v. WKI Outsourcing Solutions, LLC*, No. 3:14-cv-00159, 2014 WL 12573321, at *1 (W.D. Tex. Sept. 29, 2014) ("The exercise of a court's authority to strike pleadings or portions of pleadings . . . is generally disfavored due to the preference for resolving cases on the merits.").

Finally, the Court should reject Plaintiffs' unsupported conjecture about "absurd results." Plaintiffs suggest that if the safe harbor applies to DMCA claims, "nefarious actors" could shield

5

themselves from liability for violating the DMCA—for example, for selling codes to decrypt satellite TV programs—by qualifying for a safe harbor. Mot. to Strike, ¶ 23. Plaintiffs ignore that the safe harbors are only available to a defined class of "service providers" in the first place. *See* § 512(k)(1). Furthermore, the safe harbors contain various restrictions that would prevent this sort of behavior, such as the requirements that service providers (1) enforce a policy for terminating repeat copyright infringers from their systems and (2) do not interfere with "standard technical measures . . . used to identify or protect copyrighted works." § 512(i). Plaintiffs' "absurd results" could never come to pass.

The Court should therefore reject Plaintiffs' request to "strike" Defendant's safe harbor defense as to Plaintiffs' Count III.

## III.    DEFENDANT'S FIRST DEFENSE (FAILURE TO STATE A CLAIM) IS PROPER

Plaintiffs' request to strike Defendant's first affirmative defense is likewise a waste of the Court's and the parties' time. Defendants routinely plead failure to state a claim as a defense, and Defendant's pleaded defenses are expressly not limited to affirmative defenses. *See* Amended Answer at 19 (listing "Defendant's Additional and Affirmative Defenses"). Striking this defense would not simplify the case in any way, and the Court should therefore deny Plaintiffs' Motion. *See Haley Paint Co. v. E.I. Du Pont De Nemours & Co.*, 279 F.R.D. 331, 337 (D. Md. 2012) (denying motion to strike defense of failure to state a claim because "it will serve no purpose to strike" it).

## CONCLUSION

For the foregoing reasons, the Court should deny Plaintiffs' Motion to Strike Defendant's First and Fifth Affirmative Defenses. ECF No. 112.

Dated: June 30, 2023

Respectfully submitted,

By: */s/ Zach C. Howenstine*
Richard L. Brophy*
Zachary C. Howenstine*
Kyle G. Gottuso*
Angela B. Kennedy*
Margaret R. Szewczyk*
Sydney K. Johnson*
ARMSTRONG TEASDALE LLP
7700 Forsyth Blvd., Suite 1800
St. Louis, Missouri 63105
(314) 621–5070
rbrophy@atllp.com
zhowenstine@atllp.com
kgottuso@atllp.com
akennedy@atllp.com
mszewczyk@atllp.com
skjohnson@atllp.com
**Admitted Pro Hac Vice*

Jacqueline P. Altman
John P. Palmer
NAMAN HOWELL SMITH & LEE
400 Austin Avenue, Suite 800
Waco, TX 76701
254-755-4344
Fax: 254-754-6331
jaltman@namanhowell.com
palmer@namanhowell.com

**Attorneys for Defendant Grande Telecommunications Networks LLC**

## **CERTIFICATE OF SERVICE**

I hereby certify that on June 30, 2023, I caused a copy of the foregoing to be served upon all counsel of record via ECF notification.

By:  */s/ Zach C. Howenstine*