**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | |
|---|---|
| AFTER II MOVIE, LLC, ET AL., <br><br> Plaintiffs, <br><br> v. <br><br> GRANDE COMMUNICATIONS NETWORKS, LLC, <br><br> Defendant. | No. 1:21-cv-00709-RP |

**DEFENDANT GRANDE COMMUNICATIONS NETWORKS, LLC'S REPLY IN SUPPORT OF ITS MOTION TO MODIFY SCHEDULING ORDER AND REQUEST FOR EXPEDITED BRIEFING**

Defendant Grande Communications Networks, LLC ("Grande") files this Reply in support of its Motion and to address Plaintiffs' Opposition (ECF No. 130). Grande reserves the right to further address Plaintiffs' Opposition at oral argument.

### PLAINTIFFS' OPPOSITION FAILS TO REBUT THE GOOD CAUSE ESTABLISHED FOR MODIFYING THE SCHEDULING ORDER

#### A. Plaintiffs' Summary of the Source Code Review Issue is Misleading and Fails to Appreciate the Prejudice Grande Faced

One of the bases for Grande's request to extend the Scheduling Order is that Grande, and its expert, were not permitted reasonable and effective access to important source code until recently. As explained in its Motion, Grande reasonably requires additional time to prepare and serve its expert reports because Plaintiffs served two separate expert reports concerning the technical functioning of Maverickeye's ("MEU") software[1], based on (among other things) their experts' review of, and access to, the MEU source code, demonstrations of the software in operation, and interviews of MEU personnel. Grande and Grande's expert did not have access to this source code until the week of September 11, 2023.

Plaintiffs spend most of their Opposition outlining a self-serving timeline of the parties' extensive back-and-forth regarding the review of the important MEU source code. The issue, however, is not whether Plaintiffs offered to make the source code available (they did), but that the access that was being offered was unreasonable and would have been prejudicial to Grande, given the lack of any documentary evidence regarding MEU's software and the fact that Grande was being offered only a brief period of time to review the source code, without on-going access.

---

[1] For clarity's sake, third-party MEU is a German company hired by Plaintiffs to generate notices to be sent to ISPs regarding alleged instances of unauthorized file sharing. The sole evidentiary basis for Plaintiffs' infringement allegations comes from MEU and is based on a monitoring system maintained by MEU. *See* 2nd Am. Compl., ¶¶ 72–78, 102 (ECF No. 45). It is undisputed that the operation of MEU's system is important to this case.

At least as early as February 24, 2022, Grande served discovery requests seeking technical information relating to MEU's system. *See* Exhibits A and B (RFPs and ROGs). At first, Plaintiffs objected to producing responsive information as not within their possession, custody, or control. The parties met-and-conferred, and Grande explained the necessity for technical information relating to MEU. Following these meet-and-confers, prior counsel for Plaintiffs indicated that certain technical information existed, and it would be produced soon. Exhibit C (November 29, 2022 Email from J. Bui) ("We have triple-checked with MEU and there are very limited documents other than the source code that explains how the technology works. . . . We will timely produce anything that is responsive.") When this information was not produced, Grande followed up with Plaintiffs' counsel and was then informed that, unbelievably, no such information exists (no marketing material, user manuals, schematics, design documents, internal notes or presentations, etc. relating to MEU's system).

Grande now faced a dilemma. Knowing that Plaintiffs' experts would rely heavily on the MEU source code and technical documents in their own reports—to which Plaintiffs' experts had unfettered access—Grande would be prejudiced if their expert reviewed the source code without a frame of reference of how the system worked, and prior to being able to consider any assertions made by Plaintiffs' experts or review MEU materials those experts might rely on. In other words, if Grande had agreed to perform the source code review when and how Plaintiffs wanted, Grande would have been going into the review without an understanding of how the MEU system operated, with a short window of time to conduct the review, without the benefit of having the same information and access that Plaintiffs' experts received, and without the ability to revisit the code to address any subsequent questions or concerns.

Grande's concerns were well founded. Once Plaintiffs served their two technical expert reports on August 7, 2023, it became clear that Plaintiffs' experts had access to MEU material and personnel that Grande was not provided. As soon as Plaintiffs served their expert reports, Grande quickly and diligently scheduled and conducted the source code review.[2] In short, the timing and manner of the source code review is the direct result of Plaintiffs' refusal to make the source code available to Grande's expert on an ongoing basis—*e.g.*, by providing it on a laptop with access controls and confidentiality restrictions, as is customary in comparable cases.[3]

### B.   Other Recent Discovery Issues and Disputes Necessitate Extending the Scheduling Order

The delay associated with the review of MEU's source code is just one of many reasons why the Scheduling Order needs to be extended. More importantly, however, is the fact that the parties now have **49 days** before the close of discovery to (1) complete document productions, (2) conduct all fact depositions (to date, none have been taken), (3) prepare and serve additional expert reports (Grande's expert reports, plus any rebuttal or supplemental reports to account for intervening discovery), (4) conduct all expert depositions, and (5) complete any additional discovery required by the Court's rulings on the pending motions. As stated in Grande's Motion, this is not enough time.

Additionally, Plaintiffs' document productions are ongoing, and the parties need additional time to meet-and-confer (and potentially conduct motion practice) to determine what documents still have not been produced. For example, just three days ago on September 12, Plaintiffs

---

[2] The source code review was conducted in Hawaii starting on September 11 and is scheduled to conclude today.

[3] It is worth noting that this is how the source code review was conducted in the *UMG v. Grande* matter. Neither Plaintiffs nor MEU has provided any explanation for why their source code requires an even more stringent level of protection.

3

produced more than 30 additional documents relating to copyright assignments that Grande has been requesting since at least February 24, 2022.[4]  Plaintiffs argue in Opposition that the issues with the ownership of the copyrights could have been determined before now, but Grande has requested the documents in Plaintiffs' possession, custody, or control to determine the correct chain of title for these Works, and it still has not received all of this information.  As previously noted, it also became clear based on Plaintiffs' expert reports that Plaintiffs failed to produce royalty statements, distribution agreements, and other revenue/profit information for many works in suit.  Plaintiffs do not dispute this issue in their Opposition, nor have they rectified this issue.

Also weighing heavily in favor of extending the Scheduling Order is the fact that there are pending motions—specifically, Plaintiffs' Motion for Leave to File Third Amended Complaint, and Plaintiffs' Second Motion to Compel—that could have a substantial impact on the scope of this case going forward.  Indeed, if Plaintiffs are permitted to amend their Complaint, a new monitoring company other than MEU (called Irdeto) may become relevant, requiring discovery into the operation of that system.  Plaintiffs attempt to rebut this point by stating that Defendants have known that Plaintiffs may rely on evidence from Irdeto, but this does not change the fact that if Plaintiffs are permitted to amend their complaint, it will greatly change the scope of the discovery in this case.  The amount of remaining discovery—both factual discovery and expert discovery—to be completed necessitates the 60-day extension requested in Grande's Motion.

  **C.**   **Plaintiffs Fail to Identify Any Actual Prejudice They Will Face by Extending the Case Schedule**

In its Opposition, the only purported prejudice identified by Plaintiffs is that Plaintiffs' representatives have "blocked off two weeks for this trial in April," and they would be prejudiced

---

[4] Additional ownership documents remain missing.  Counsel for Plaintiffs and Grande are discussing this issue and working to schedule a meet-and-confer for late next week.

if the trial date is moved.  ECF No. 130 at 11.  As previously stated, this is not sufficient prejudice. *See, e.g.*, *Luu v. Int'l Inv. Trade & Serv. Grp.*, No. 3:11-cv-182, 2012 WL 2450773, at *3 (S.D. Tex. June 26, 2012).  If the issue is one of coordinating schedules, Grande is confident that the parties and the Court can reach an agreement on scheduling a new trial date.

**D.       Apparent Dispute as to the Deadlines to Serve Expert Reports**

Plaintiffs assert that Defendants deadline to serve expert reports has passed, but this is inconsistent with the plain reading of the Court's Scheduling Order.  ECF No. 130 at 10-11.  The Scheduling Order states that "Parties resisting claims for relief shall file their designation of testifying experts and serve on all parties, but not file, the materials required by Federal Rule of Civil Procedure 26(a)(2)(B) on or before **September 22, 2023**," making Grande's deadline to serve its expert reports September 22, 2023 (which the Court has since extended to October 2, 2023) ECF No. 111 at 2-3; ECF No. 128.

Further, Plaintiffs' summary of *UMG v. Grande. UMG Recordings, Inc. v. Grande Communs. Networks, LLC*, No. 1:17-cv-365, 2019 WL 3207802, at *4 (W.D. Tex. July 16, 2019) is wrong, and is yet another instance of Plaintiffs mischaracterizing the events of the *UMG* matter in an attempt to benefit Plaintiffs here.  The issue in dispute in the *UMG* matter was different. There, the dispute was whether Grande could include information in a <u>supplemental</u> expert report that the plaintiff argued should have been included in that same expert's opening report.

## CONCLUSION

For the foregoing reasons, Grande respectfully requests that the Court grant its Motion and enter the proposed Third Amended Scheduling Order attached as Exhibit 1 to its Motion.

5

Dated: September 15, 2023

Respectfully submitted,

By: */s/ Zachary C. Howenstine*
Richard L. Brophy*
Zachary C. Howenstine*
Kyle G. Gottuso*
Angela B. Kennedy*
Margaret R. Szewczyk*
Sydney K. Johnson*
ARMSTRONG TEASDALE LLP
7700 Forsyth Blvd., Suite 1800
St. Louis, Missouri 63105
(314) 621–5070
rbrophy@atllp.com
zhowenstine@atllp.com
kgottuso@atllp.com
akennedy@atllp.com
mszewczyk@atllp.com
skjohnson@atllp.com
*Admitted Pro Hac Vice*

Jacqueline P. Altman
John P. Palmer
NAMAN HOWELL SMITH & LEE
400 Austin Avenue, Suite 800
Waco, TX 76701
254-755-4344
Fax: 254-754-6331
jaltman@namanhowell.com
palmer@namanhowell.com

***Attorneys for Defendant Grande Telecommunications Networks LLC***

## **CERTIFICATE OF SERVICE**

I hereby certify that on September 15, 2023, I caused a copy of the foregoing to be served upon all counsel of record via ECF notification.

By:  */s/ Zachary C. Howenstine*